## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, ENVIRONMENTAL DEFENSE FUND, and SIERRA CLUB | ) <br> ) <br> ) <br> ) |
| *Petitioners*, | ) <br> ) Case No. 26-1041 |
| v. | ) <br> ) |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) <br> ) <br> ) |
| *Respondent*. | ) |

### JOINT PETITION FOR REVIEW

As authorized by Section 313 of the Federal Power Act, 16 U.S.C. § 825*l*(b), and Rule 15(a) of the Federal Rules of Appellate Procedure, Natural Resources Defense Council, Environmental Defense Fund, and Sierra Club (collectively "Public Interest Organizations") respectfully petition the United States Court of Appeals for the District of Columbia Circuit to review and set aside the following orders of the Federal Energy Regulatory Commission ("FERC" or "the Commission"):

1. PJM Interconnection, LLC, *Order Accepting Tariff Revisions*, ER25-2653-000. 192 FERC ¶ 61,159 (Aug. 15, 2025) ("Order," attached at Exhibit A);

2. PJM Interconnection, LLC, *Order Addressing Arguments Raised on Rehearing*, ER25-2653-001. 193 FERC ¶ 61,229 (Dec. 22, 2025) ("Order on Rehearing," attached as Exhibit B).

This Court has subject matter jurisdiction, Public Interest Organizations are parties aggrieved by the Order and Order on Rehearing, and venue is proper in this forum. 16 U.S.C. § 825*l*(a)-(b). On September 15, 2025, Public Interest Organizations timely sought rehearing of the Order. The Commission issued its Order on Rehearing on December 22, 2025. Public Interest Organizations' petition is filed within sixty days after the Order on Rehearing. 16 U.S.C. § 825*l*(b); *Am. Whitewater v. FERC*, 125 F.4th 1139, 1152 (D.C. Cir. 2025) ("Although a rehearing request *may* be deemed denied 30 days after it is filed, that does not mean that it *must be* and a litigant may either appeal after 30 days have elapsed or wait for the Commission to act."). The prerequisites for judicial review of this petition have therefore been met.

Respectfully Submitted,                    Dated: February 20, 2026

*/s/Caroline Reiser*[1]
Caroline Reiser (DC Cir. 62319)
Gavin McCabe (DC Cir. 53966)
Simi Bhat (DC Cir. 55968)
Karen Chen
Natural Resources Defense Council
40 W. 20th Street

---

[1] Counsel represents that the other parties listed in the signature blocks on this document consent to this filing.

New York, NY 10011
gmccabe@nrdc.org
creiser@nrdc.org
sbhat@nrdc.org
kchen@nrdc.org
(212) 727-4529

*/s/ Tomas Carbonell*
Tomas Carbonell (DC Cir. 54320)
Ted Kelly
Environmental Defense Fund
555 12th St. NW, #400
Washington, DC 20004
tcarbonell@edf.org
tekelly@edf.org
(202) 387-3500

*/s/ Gregory E. Wannier*
Gregory E. Wannier (DC Cir. 55920)
Sanjay Narayan (DC Cir. 48545)
Sierra Club Environmental Law
Program
2101 Webster St., Ste 1300
Oakland, CA 94612
greg.wannier@sierraclub.org
sanjay.narayan@sierraclub.org
(415) 977-5646

## RULE 26.1 DISCLOSURE STATEMENTS

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, Petitioners make the following disclosures:

Natural Resources Defense Council states that it is a non-profit environmental organization. NRDC has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Environmental Defense Fund states that it is a 50l(c)(3) nonprofit environmental organization dedicated to finding practical solutions to critical environmental problems through the use of law, policy, science, and economics. Environmental Defense Fund has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Sierra Club, a corporation organized and existing under the laws of the State of California, is a national nonprofit organization dedicated to the protection and enjoyment of the environment. Sierra Club has no parent companies and no publicly held company has a 10% or greater ownership interest in Sierra Club.

Dated: February 20, 2026                    Respectfully submitted,

/s/*Caroline Reiser*
Caroline Reiser
Natural Resources Defense Council
creiser@nrdc.org
(202) 717-8341

# CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 15(c), I hereby certify that on this day, I caused the foregoing Joint Petition for Review, Rule 26.1 Disclosure Statements, and all attachments to be served upon the Secretary of the Federal Energy Regulatory Commission via the Commission's eFiling system in the proceedings below and via e-mail upon the Office of the Solicitor of the Federal Energy Regulatory Commission at the following address:

Robert H. Solomon, Solicitor
Federal Energy Regulatory Commission
robert.solomon@ferc.gov

I hereby further certify that I have caused to be served a copy of the foregoing Joint Petition for Review, Rule 26.1 Disclosure Statements, and all attachments via e-mail on all parties to the proceedings before the Commission under Docket No. ER25-2653, as listed below.

| | | |
|---|---|---|
| American Clean Power Association | Gabriel Tabak Counsel American Clean Power Association 1501 M St NW Washington, DISTRICT OF COLUMBIA 20005 UNITED STATES gtabak@cleanpower.org | |
| American Electric Power Service Corporation | Carrie Bumgarner Senior Counsel American Electric Power Company | Benjamin F Greene, III AEP Service Corporation 1 RIVERSIDE PLZ |

| | | |
|---|---|---|
| | 1 Riverside Plaza<br>Columbus, OHIO 43215<br>UNITED STATES<br>clbumgarner@aep.com | COLUMBUS, OHIO 43215<br>bfgreene@aep.com |
| American Electric Power Service Corporation | | FERC Service List<br>801 Pennsylvania Avenue<br>Suite 735<br>Washington, DISTRICT OF<br>COLUMBIA 20004<br>ferc_service_list@aep.com |
| American Electric Power Service Corporation | | LaChon Turner<br>AEP COMPANIES<br>801 PENNSYLVANIA AVE<br>NW STE 735<br>WASHINGTON, DISTRICT OF<br>COLUMBIA 20004<br>lturner@aep.com |
| Buckeye Power, Inc. | Lija Kaleps-Clark<br>Buckeye Power, Inc.<br>6677 Busch Blvd<br>Columbus, OHIO 43229<br>UNITED STATES<br>lkaleps@ohioec.org | Kurt Helfrich<br>Buckeye Power, Inc.<br>6677 Busch Boulevard<br>Columbus, OHIO 43229<br>khelfrich@ohioec.org |
| Calpine Corporation | Sarah Novosel<br>SR Vice President Gov.<br>Affairs<br>Calpine Corporation<br>717 Texas Avenue, Suite 1000<br>Houston, TEXAS 77002<br>UNITED STATES<br>snovosel@calpine.com | |
| Calpine Corporation | Rachael Marsh<br>V.P. and Managing Counsel<br>PO Box NA<br>Houston,TEXAS 77002<br>UNITED STATES<br>rachael.marsh@calpine.com | |

| | | |
|---|---|---|
| Calpine Corporation | David Scarpignato<br>Calpine Corporation<br>717 Texas Avenue<br>Suite 1000<br>Houston, TEXAS 77002<br>UNITED STATES<br>david.scarpignato@calpine.com | |
| Constellation Energy Generation, LLC | Christopher Wilson<br>Director, Fed. Regulatory A<br>Constellation Energy Generation, LLC<br>250 Massachusetts Avenue NW<br>Suite 760<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>FERCe-filings1@Constellation.com | Adrien Ford<br>Constellation Energy Commodities Group<br>344 HOMESTEAD RD<br>WAYNE, PENNSYLVANIA 19087<br>adrien.ford@constellation.com |
| Constellation Energy Generation, LLC | Carrie Allen<br>SVP & Deputy General Counsel<br>CONSTELLATION ENERGY CORPORATION<br>101 Constitution Ave. NW<br>Suite 400 East<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>carrie.allen@constellation.com | |
| Constellation Energy Generation, LLC | John White<br>101 CONSTITUTION AVE NW STE 400-EAST<br>WASHINGTON, DISTRICT OF COLUMBIA 20001 | |

| | | |
|---|---|---|
| | UNITED STATES<br>john.white@constellation.com | |
| Dominion Energy Services, Inc. | Kathryn Gantley<br>Counsel<br>Dominion Energy Services, Inc.<br>400 N CAPITOL ST NW STE 875<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>kathryn.gantley@dominionenergy.com | James G Davis<br>Regulatory and Market Policy S<br>Dominion Energy & Dominion Generation<br>120 TREDEGAR ST<br>RIVERVIEW<br>RICHMOND, VIRGINIA 23219<br>james.g.davis@dominionenergy.com |
| Duke Energy Business Services LLC | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Carolinas, LLC, Duke Energy Progress, LLC, and Duke Energy Florida, LLC | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Indiana, LLC | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004 | |

| | | |
|---|---|---|
| | UNITED STATES<br>molly.suda@duke-energy.com | |
| Duke Energy Ohio, Inc. and Duke Energy Kentucky, Inc. | Molly Suda<br>Associate General Counsel<br>Duke Energy Corporation<br>1301 PENNSYLVANIA AVE NW STE 200<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>molly.suda@duke-energy.com | |
| East Kentucky Power Cooperative, Inc. | Daniel Frank<br>Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W.<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001-3980<br>UNITED STATES<br>DanielFrank@eversheds-sutherland.com | Denise R Foster Cronin<br>Vice President, Federal and RT<br>East Kentucky Power Cooperative, Inc.<br>4775 LEXINGTON ROAD<br>LEXINGTON, KENTUCKY 40392<br>denise.cronin@ekpc.coop |
| East Kentucky Power Cooperative, Inc. | Kelly Cuthbertson<br>Associate<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>kellycuthbertson@eversheds-sutherland.com | |
| Electric Power Supply Association | Nancy Bagot<br>Senior Vice President<br>Electric Power Supply Association<br>1401 New York Avenue, NW | |

| | | |
|---|---|---|
| | Suite 950<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>NancyB@epsa.org | |
| Environmental Defense Fund | Ted Kelly<br>Senior Attorney<br>Environmental Defense Fund<br>1875 Connecticut Ave NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20012<br>UNITED STATES<br>tekelly@edf.org | |
| ENVIRONME NTAL LAW & POLICY CENTER | Nicholas Wallace<br>ENVIRONMENTAL LAW & POLICY CENTER<br>35 E WACKER DR STE 1600<br>CHICAGO, ILLINOIS 60601<br>UNITED STATES<br>nwallace@elpc.org | |
| Exelon Corporation | Cynthia Holland<br>Associate General Counsel<br>Exelon Corporation<br>701 Ninth Street NW<br>Washington, DISTRICT OF COLUMBIA 20068<br>UNITED STATES<br>cynthia.holland@exeloncorp.com | Jordan Kwok<br>Director, Federal Regulatory A<br>Exelon Business Services<br>701 9TH ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>jordan.kwok@exeloncorp.com |
| Exelon Corporation | Alejandro Bautista<br>Assistant General Counsel<br>Exelon Business Services Company, LLC<br>2301 Market Street<br>Philadelphia, PENNSYLVANIA 19101<br>UNITED STATES | |

| | | |
|---|---|---|
| | alejandro.bautista@exeloncorp.com | |
| FirstEnergy Pennsylvania Electric Company | Ravay Smith<br>Attorney<br>FIRST ENERGY GENERATION CORP<br>801 Pennsylvania Ave<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>ravaysmith@firstenergycorp.com | |
| FirstEnergy Pennsylvania Electric Company | Morgan Parke<br>Associate General Counsel<br>FirstEnergy<br>341 White Pond Dr.<br>Akron, OHIO 44320<br>UNITED STATES<br>mparke@firstenergycorp.com | |
| FirstEnergy Service Company | Ravay Smith<br>Attorney<br>FIRST ENERGY GENERATION CORP<br>801 Pennsylvania Ave<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>ravaysmith@firstenergycorp.com | |
| FirstEnergy Service Company | Morgan Parke<br>Associate General Counsel<br>FirstEnergy<br>341 White Pond Dr.<br>Akron, OHIO 44320<br>UNITED STATES<br>mparke@firstenergycorp.com | |
| Illinois Citizens Utility Board | Eric DeBellis<br>Illinois Citizens Utility Board | Clara Summers<br>Consumers for a Better Grid Ca |

| | | |
|---|---|---|
| | 309 W WASHINGTON ST STE 800<br>CHICAGO, ILLINOIS 60606<br>UNITED STATES<br>edebellis@citizensutilityboard.org | Citizens Utility Board of Illinois<br>309 W WASHINGTON ST STE 800<br>CHICAGO, ILLINOIS 60606<br>csummers@citizensutilityboard.org |
| Illinois Municipal Electric Agency | Daniel Chung<br>Staff Attorney<br>Illinois Municipal Electric Agency<br>3400 CONIFER DR<br>SPRINGFIELD, ILLINOIS 62711<br>UNITED STATES<br>dchung@imea.org | |
| Illinois Municipal Electric Agency | Troy Fodor<br>General Counsel<br>Illinois Municipal Electric Agency<br>3400 Conifer Drive<br>Springfield, ILLINOIS 62711<br>UNITED STATES<br>tfodor@imea.org | |
| Jersey Central Power & Light Company | Ravay Smith<br>Attorney<br>FIRST ENERGY GENERATION CORP<br>801 Pennsylvania Ave<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>ravaysmith@firstenergycorp.com | |
| Jersey Central Power & Light Company | Morgan Parke<br>Associate General Counsel<br>FirstEnergy<br>341 White Pond Dr.<br>Akron, OHIO 44320 | |

| | | |
|---|---|---|
| | UNITED STATES<br>mparke@firstenergycorp.com | |
| LS Power Development, LLC | Marjorie Philips<br>VP, Wholesale Market Policy<br>LS Power Associates, L.P.<br>250 W 55TH ST FL 31<br>NEW YORK, NEW YORK 10019<br>UNITED STATES<br>mphilips@lspower.com | |
| LS Power Development, LLC | Tom Hoatson<br>1 Tower Center<br>East Brunswick, NEW JERSEY 08816<br>UNITED STATES<br>thoatson@lspower.com | |
| LS Power Development, LLC | Daniel Pierpont<br>Vice President<br>LS Power Development, LLC<br>250 W 55TH ST FL 31<br>NEW YORK, NEW YORK 10019<br>UNITED STATES<br>dpierpont@lspower.com | |
| Maryland Office of People's Counsel | Mark Byrd<br>Maryland Office of People's Counsel<br>6 SAINT PAUL ST STE 2102<br>BALTIMORE, MARYLAND 21202<br>UNITED STATES<br>mark.byrd1@maryland.gov | William F. Fields<br>Deputy People's Counsel<br>6 SAINT PAUL ST STE 2102<br>BALTIMORE, MARYLAND 21202<br>william.fields@maryland.gov |
| Monitoring Analytics, LLC | Jeffrey Mayes<br>General Counsel<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Valley Forge Corporate Center | Suzette N Krausen<br>Executive Assistant<br>Monitoring Analytics, LLC<br>2621 Van Buren Ave Ste 160<br>Norristown, PENNSYLVANIA 19403 |

| | | |
|---|---|---|
| | Eagleville, PENNSYLVANIA 19403<br>UNITED STATES<br>jeffrey.mayes@monitoringanalytics.com | Suzette.Krausen@monitoringanalytics.com |
| Monitoring Analytics, LLC | | Joseph Bowring<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Norristown, PENNSYLVANIA 19403<br>Joseph.Bowring@monitoringanalytics.com |
| Monongahela Power Company | Ravay Smith<br>Attorney<br>FIRST ENERGY GENERATION CORP<br>801 Pennsylvania Ave<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>ravaysmith@firstenergycorp.com | |
| Monongahela Power Company | Morgan Parke<br>Associate General Counsel<br>FirstEnergy<br>341 White Pond Dr.<br>Akron, OHIO 44320<br>UNITED STATES<br>mparke@firstenergycorp.com | |
| Natural Resource Defense Council | Casey Roberts<br>Director, RTO Advocacy<br>Sustainable FERC Project<br>1536 WYNKOOP ST STE 222<br>DENVER, COLORADO 80202 | |

| | | |
|---|---|---|
| | UNITED STATES<br>croberts@nrdc.org | |
| New Jersey Division of Rate Counsel | Robert Glover<br>New Jersey Division of Rate Counsel<br>PO Box 003<br>Trenton,NEW JERSEY 08625<br>UNITED STATES<br>rglover@rpa.nj.gov | Brian O Lipman<br>Acting Director<br>New Jersey Division of Rate Counsel<br>140 East Front Street<br>4th Floor<br>Trenton, NEW JERSEY 08625<br>blipman@rpa.nj.gov |
| New Jersey Division of Rate Counsel | | Debora Layugan<br>New Jersey Division of Rate Counsel<br>PO Box 003<br>Trenton, 08625<br>dlayugan@rpa.nj.gov |
| New Jersey Division of Rate Counsel | | T. David Wand<br>Division of Rate Counsel<br>New Jersey Division of Rate Counsel<br>140 E. Front St.<br>4th Flr.<br>Trenton, NEW JERSEY 08625<br>dwand@rpa.nj.gov |
| New Jersey Division of Rate Counsel | | Emily Lam<br>New Jersey Division of Rate Counsel<br>140 E FRONT ST<br>TRENTON, NEW JERSEY 08608<br>elam@rpa.nj.gov |
| NextEra Energy Marketing, LLC | Katherine O'Konski<br>Senior Attorney<br>NextEra Energy, Inc.<br>801 Pennsylvania Avenue, N.W.<br>Suite 220<br>Washington, DISTRICT OF | |

| | | |
|---|---|---|
| | COLUMBIA 20004<br>UNITED STATES<br>katherine.okonski@nexteraenergy.com | |
| NextEra Energy Resources, LLC | Katherine O'Konski<br>Senior Attorney<br>NextEra Energy, Inc.<br>801 Pennsylvania Avenue, N.W.<br>Suite 220<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>katherine.okonski@nexteraenergy.com | |
| North Carolina Electric Membership Corporation | Randolph Elliott<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>relliott@mccarter.com | Michael D Youth<br>Associate General Counsel<br>NCEMC<br>3400 SUMNER BLVD<br>RALEIGH, NORTH CAROLINA 27616<br>michael.youth@ncemcs.com |
| North Carolina Electric Membership Corporation | F. Alvin Taylor<br>Attorney<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>ataylor@mccarter.com | Charles Bayless<br>General Counsel<br>North Carolina Electric Membership Corporation<br>3400 SUMNER BLVD<br>RALEIGH, NORTH CAROLINA 27616<br>charlie.bayless@ncemcs.com |
| North Carolina Electric Membership Corporation | Sean Beeny<br>McCarter & English, LLP<br>1301 K Street, NW<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005 | |

| | | |
|---|---|---|
| | UNITED STATES<br>sbeeny@mccarter.com | |
| Ohio Edison Company | Ravay Smith<br>Attorney<br>FIRST ENERGY<br>GENERATION CORP<br>801 Pennsylvania Ave<br>Washington, DISTRICT OF<br>COLUMBIA 20004<br>UNITED STATES<br>ravaysmith@firstenergycorp.com | |
| Ohio Edison Company | Morgan Parke<br>Associate General Counsel<br>FirstEnergy<br>341 White Pond Dr.<br>Akron, OHIO 44320<br>UNITED STATES<br>mparke@firstenergycorp.com | |
| Old Dominion Electric Cooperative | Adrienne Clair<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF<br>COLUMBIA 20006<br>UNITED STATES<br>aclair@thompsoncoburn.com | Jenna Cliatt<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF<br>COLUMBIA 20006<br>jcliatt@thompsoncoburn.com |
| Old Dominion Electric Cooperative | | Monica Sterling<br>Thompson Coburn LLP<br>1909 K Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF<br>COLUMBIA 20006<br>MSterling@thompsoncoburn.com |
| PJM Industrial Customer Coalition | Matthew Garber<br>Attorney<br>McNees Wallace & Nurick | Susan E Bruce<br>McNees Wallace & Nurick LLC<br>PO Box 1166 |

| | | |
|---|---|---|
| | LLC<br>100 PINE ST<br>HARRISBURG,<br>PENNSYLVANIA 17101<br>UNITED STATES<br>mgarber@mcneeslaw.com | Harrisburg,PENNSYLVANIA 17108<br>sbruce@mcneeslaw.com |
| PJM Industrial Customer Coalition | | David S. Mabry<br>McNees Wallace & Nurick LLC<br>100 Pine Street<br>Harrisburg, PENNSYLVANIA 17101<br>dmabry@mwn.com |
| PJM Industrial Customer Coalition | | Lauren Huff<br>Paralegal<br>McNees Wallace & Nurick LLC<br>100 Pine Street<br>P.O. Box 1166<br>Harrisburg, PENNSYLVANIA 17108<br>lhuff@mwn.com |
| PJM Industrial Customer Coalition | | Kenneth R Stark<br>McNees Wallace & Nurick LLC<br>100 PINE ST<br>HARRISBURG, PENNSYLVANIA 17101<br>kstark@mcneeslaw.com |
| PJM Interconnection, L.L.C. | Vivian Chum<br>ATTORNEY<br>Wright & Talisman, P.C.<br>WRIGHT & TALISMAN<br>1200 G ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>chum@wrightlaw.com | Ryan Collins<br>Attorney<br>Wright & Talisman, PC<br>1200 G Street, N.W., Suite 600<br>Washington, DISTRICT OF COLUMBIA 20005<br>collins@wrightlaw.com |
| PJM Interconnection, L.L.C. | | Craig Glazer<br>V.P., Federal Gov't Policy<br>PJM Interconnection, L.L.C. |

| | | |
|---|---|---|
| | | 1200 G Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20005<br>craig.glazer@pjm.com |
| PJM Interconnection, L.L.C. | | Chenchao Lu<br>Associate General Counsel<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Norristown, PENNSYLVANIA 19403<br>chenchao.lu@pjm.com |
| PJM Interconnection, L.L.C. | Jesse Jacobe<br>Senior Paralegal<br>PJM Interconnection, L.L.C.<br>PJM Interconnection<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>jesse.jacobe@pjm.com | |
| PJM Power Providers Group | Glen Thomas<br>101 Lindenwood Drive<br>Suite 225<br>Malvern, PENNSYLVANIA 19355<br>UNITED STATES<br>gthomas@gtpowergroup.com | Diane L Slifer<br>101 LINDENWOOD DR STE 225<br>MALVERN, PENNSYLVANIA 19355<br>dslifer@gtpowergroup.com |
| PJM Power Providers Group | | Laura Chappelle<br>6688 FOREST BEACH DR<br>HOLLAND, MICHIGAN 49423<br>laurac@chappelleconsulting.net |
| PSEG Power LLC | Viet Ngo<br>Associate Counsel, Federal Reg<br>Public Service Enterprise Group Incorporated | Robert E. Gardinor<br>Paralegal<br>PSEG Services Corporation<br>80 Park Plaza, T5 |

| | | |
|---|---|---|
| | 601 New Jersey Ave, NW Suite 310 WASHINGTON, DISTRICT OF COLUMBIA 20001 UNITED STATES Viet.Ngo@pseg.com | Newark, NEW JERSEY 07102 Robert.Gardinor@pseg.com |
| PSEG Companies | Viet Ngo Associate Counsel, Federal Reg Public Service Enterprise Group Incorporated 601 New Jersey Ave, NW Suite 310 WASHINGTON, DISTRICT OF COLUMBIA 20001 UNITED STATES Viet.Ngo@pseg.com | Robert E. Gardinor Paralegal PSEG Services Corporation 80 Park Plaza, T5 Newark, NEW JERSEY 07102 Robert.Gardinor@pseg.com |
| PSEG Energy Resources & Trade LLC | Viet Ngo Associate Counsel, Federal Reg Public Service Enterprise Group Incorporated 601 New Jersey Ave, NW Suite 310 WASHINGTON, DISTRICT OF COLUMBIA 20001 UNITED STATES Viet.Ngo@pseg.com | Robert E. Gardinor Paralegal PSEG Services Corporation 80 Park Plaza, T5 Newark, NEW JERSEY 07102 Robert.Gardinor@pseg.com |
| PUBLIC CITIZEN, INC | Tyson Slocum Energy Program Director PUBLIC CITIZEN, INC 215 PENNSYLVANIA AVE SE WASHINGTON, DISTRICT OF COLUMBIA 20003 UNITED STATES tslocum@citizen.org | |

| | | |
|---|---|---|
| Public Service Electric and Gas Company | Viet Ngo<br>Associate Counsel, Federal Reg<br>Public Service Enterprise Group Incorporated<br>601 New Jersey Ave, NW Suite 310<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>Viet.Ngo@pseg.com | Robert E. Gardinor<br>Paralegal<br>PSEG Services Corporation<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>Robert.Gardinor@pseg.com |
| Rockland Electric Company | | Paul A. Savage<br>Consolidated Edison Development, Inc.<br>4 Irving Place<br>New York, NEW YORK 10003<br>savagep@coned.com |
| Rockland Electric Company | | Kacie Rettig<br>Con Ed<br>Con Edison Company of New York<br>4 IRVING PL<br>NEW YORK, NEW YORK 10003<br>rettigk@coned.com |
| Rockland Electric Company | | Dana Lazarus<br>Director<br>Con Edison Company of New York<br>4 Irving Place<br>New York, NEW YORK 10003<br>lazarusd@coned.com |
| Rockland Electric Company | | scott berthiaume<br>Project Specialist<br>Con Edison Company of New York<br>4 IRVING PL<br>NEW YORK, NEW YORK |

| | | |
|---|---|---|
| | | 10003<br>BerthiaumeS@Coned.com |
| Sierra Club | Justin Vickers<br>Senior Attorney<br>Sierra Club<br>Environmental Law Program<br>1229 W. Glenlake Ave.<br>Chicago, ILLINOIS 60660<br>UNITED STATES<br>justin.vickers@sierraclub.org | |
| Solar Energy Industries Association | Melissa Alfano<br>Manager of Regulatory Affairs<br>Solar Energy Industries Association<br>1425 K Street, N.W., Suite 1000<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>malfano@seia.org | |
| Solar Energy Industries Association | Greg Giunta<br>Solar Energy Industries Association<br>1425 K ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>ggiunta@seia.org | |
| Southern Maryland Electric Cooperative, Inc. | Damon Krieger<br>VP, Legal Affairs, Deputy Gen<br>Southern Maryland Electric Cooperative, Inc.<br>15035 Burnt Store Road<br>P.O. Box 1937<br>Hughesville, MARYLAND 20637-1937 | John Rohrbach<br>ED Regulatory<br>ACES POWER MARKETING<br>4140 W 99TH ST<br>CARMEL, INDIANA 46032<br>JRohrbach@acespower.com |

| | | |
|---|---|---|
| | UNITED STATES<br>Damon.Krieger@SMECO.coop | |
| Southern Maryland Electric Cooperative, Inc. | | Eugene Bradford<br>Vice President, Rates and Ener<br>SOUTHERN MARYLAND ELECTRIC COOP INC<br>15035 Burnt Store Rd.<br>Hughesville, MARYLAND 20637<br>Eugene.Bradford@smeco.coop |
| Sustainable FERC Project | Casey Roberts<br>Director, RTO Advocacy<br>Sustainable FERC Project<br>1536 WYNKOOP ST STE 222<br>DENVER, COLORADO 80202<br>UNITED STATES<br>croberts@nrdc.org | |
| The Cleveland Electric Illuminating Company | Ravay Smith<br>Attorney<br>FIRST ENERGY GENERATION CORP<br>801 Pennsylvania Ave<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>ravaysmith@firstenergycorp.com | |
| The Cleveland Electric Illuminating Company | Morgan Parke<br>Associate General Counsel<br>FirstEnergy<br>341 White Pond Dr.<br>Akron, OHIO 44320<br>UNITED STATES<br>mparke@firstenergycorp.com | |

| | | |
|---|---|---|
| The Potomac Edison Company | Ravay Smith<br>Attorney<br>FIRST ENERGY GENERATION CORP<br>801 Pennsylvania Ave<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>ravaysmith@firstenergycorp.com | |
| The Potomac Edison Company | Morgan Parke<br>Associate General Counsel<br>FirstEnergy<br>341 White Pond Dr.<br>Akron, OHIO 44320<br>UNITED STATES<br>mparke@firstenergycorp.com | |
| The Toledo Edison Company | Ravay Smith<br>Attorney<br>FIRST ENERGY GENERATION CORP<br>801 Pennsylvania Ave<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>ravaysmith@firstenergycorp.com | |
| The Toledo Edison Company | Morgan Parke<br>Associate General Counsel<br>FirstEnergy<br>341 White Pond Dr.<br>Akron, OHIO 44320<br>UNITED STATES<br>mparke@firstenergycorp.com | |
| Vistra Corp. | Frederick Heinle<br>Director, PJM Market Policy<br>Vistra Corp.<br>325 7TH ST NW STE 520 | Andrew Weinstein<br>Director of ISO-NE Markets<br>Vistra Corp.<br>325 7th Street, NW |

| | WASHINGTON, DISTRICT OF COLUMBIA 20004 UNITED STATES frederick.heinle@vistracorp.com | WASHINGTON, DISTRICT OF COLUMBIA 20004 andrew.weinstein@vistracorp.com |
|---|---|---|
| Vistra Corp. | | Jessica H. Miller VP, Associate General Counsel Vistra Corp. 1005 Congress Ave. Suite 750 Austin, TEXAS 78701 VistraFERC@vistracorp.com |

Dated: February 20, 2026

Respectfully submitted,

/s/*Caroline Reiser*
Caroline Reiser
Natural Resources Defense Council
creiser@nrdc.org
(202) 717-8341

# Exhibit A

192 FERC ¶ 61,159
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  David Rosner, Chairman;
                        Lindsay S. See and Judy W. Chang.

PJM Interconnection, L.L.C.                    Docket Nos. ER25-2653-000
United States Department of Energy                        AD25-15-000

ORDER ACCEPTING TARIFF REVISIONS

(Issued August 15, 2025)

1.      On June 26, 2025, pursuant to section 205 of the Federal Power Act (FPA),[1] PJM
Interconnection, L.L.C. (PJM) submitted proposed revisions to its Reliability Assurance
Agreement Among Load Serving Entities (RAA)[2] to establish the method by which PJM
will allocate the costs incurred by Constellation Energy Generation, LLC (Constellation)
to continue to operate Eddystone Units 3 and 4 (Eddystone Units) for 90 days beyond the
units' planned deactivation date, in compliance with an emergency order issued by
United States Department of Energy (DOE) under FPA section 202(c).[3]  As discussed
below, we accept PJM's proposed revisions, effective June 1, 2025, as requested.

I.      **Background**

2.      Constellation's Eddystone Units are dual-fuel generation units, each with a
nameplate capacity of 380 megawatts, located in Eddystone, Pennsylvania.[4]  On
December 1, 2023, Constellation provided PJM notice of its intent to deactivate the
Eddystone Units effective May 31, 2025.  Following the completion of PJM's
deactivation analysis of the units, PJM approved Constellation's request on February 27,
2024.

---

[1] 16 U.S.C. § 824d.

[2] *See* Appendix for eTariff records.  Capitalized terms that are not defined in this
order have the meaning specified in the RAA or PJM's Open Access Transmission Tariff
(Tariff).

[3] 16 U.S.C. § 824a(c).

[4] Transmittal at 9-10.

3.      On May 30, 2025, pursuant to FPA section 202(c) and section 301(b) of the DOE Organization Act,[5] DOE issued Order No. 202-25-4 (Emergency Order).[6] In the Emergency Order, the Secretary of Energy determined that "an emergency exists in portions of the electric grid operated by [PJM] due to a shortage of facilities for the generation of electric energy, resource adequacy concerns, and other causes, and that issuance of this Order will meet the emergency and serve the public interest."[7] Therefore, the Secretary of Energy directed PJM and Constellation to "take all measures necessary to ensure that [the] Eddystone Units are available to operate" from the time the order was issued to August 28, 2025.[8] The Secretary of Energy directed PJM and Constellation to file with this Commission any tariff revisions or waivers necessary to effectuate the Emergency Order, with rate recovery available pursuant to 16 U.S.C. § 824a(c).[9]

4.      On June 17, 2025, the Secretary of Energy referred to the Commission rate issues, pursuant to 10 C.F.R. § 205.376 (2024), related to the Emergency Order (Referral).[10] The Referral noted that, on June 13, 2025, PJM submitted a report to DOE in which PJM stated:

> PJM and [Constellation] agree that the Facility will be compensated at a rate that is equivalent to the Deactivation Avoidable Cost Credit ("DACC"), determined in accordance with relevant provisions of Tariff, Part V, Sections 114, 115, 116, 118 and 118A ("the DACC Terms"), provided, however, that PJM's payment obligation shall be contingent on [Commission] approval of a cost allocation methodology that allows PJM to collect [Constellation's] compensation from market participants.  PJM also understands that it is [Constellation's] intent to make an informational filing with

---

[5] 42 U.S.C. § 7151(b).

[6] U.S. Dept. of Energy, May 30, 2025 Emergency Order No. 202-25-4, https://www.energy.gov/sites/default/files/2025-05/Federal%20Power%20Act %20Section%20202%28c%29%20PJM%20Interconnection.pdf.

[7] Emergency Order at 1.

[8] *Id.* at 2, ordering paras. (A), (G).

[9] *Id.*, ordering para. (E).

[10] U.S. Dep't of Energy, Referral to the Federal Energy Regulatory Commission, Docket No. AD25-15-000 (filed June 17, 2025).

the [Commission], which is not subject to approval, offering additional information about the rate.[11]

The Referral also noted that PJM planned to submit a cost allocation methodology to the Commission, pursuant to FPA section 205.[12]  The Referral stated:  "Given the parties have identified outstanding rate issues, and pursuant to 16 U.S.C. § 824a(c) and 10 C.F.R. § 205.376 and in furtherance of the [Emergency Order], this matter is hereby referred to the Commission."[13]  The Referral further noted that "DOE is not referring to the Commission any other matters, including, but not limited to, DOE's finding of an emergency, the prescription of conditions of service, or any other matter arising from DOE's exercise of its authority under section 202(c)."[14]  The Referral requested that the Commission "conduct such proceedings as it determines to be appropriate and issue a final order resolving the rate issues as discussed [therein]."[15]

5.      On June 24, 2025, in Docket No. AD25-15-000, the Commission issued an order acknowledging the Referral and providing notice of the Commission's intent to take further action to address the corresponding rate issues in appropriate proceedings, including on filings related to cost allocation based on the Secretary of Energy's findings in the Emergency Order.[16]

6.      On June 26, 2025, in Docket No. AD25-15-000, Constellation submitted to the Commission an informational filing with the compensation agreement between PJM and Constellation.[17]  In its transmittal letter, Constellation stated that it was submitting the filing for informational purposes only and that, "[a]ccordingly, no Commission action is

---

[11] DOE Referral at 1-2.

[12] *Id.* at 2 (citing PJM Interconnection, L.L.C., *PJM Report in Compliance with Ordering Paragraph D of the Department of Energy's May 30, 2025 Order No. 202-25-4*, at 3 & n.3 (June 2025), https://www.pjm.com/-/media/DotCom/committees-groups/cifp-doe-ca/postings/cifp-doe-pjm-report-on-compliance-with-eddystone.pdf).

[13] *Id.*

[14] *Id.*

[15] *Id.* at 1.

[16] *U.S. Dep't of Energy*, 191 FERC ¶ 61,217, at P 6 (2025) (Acknowledgment Order).

[17] Constellation Energy Generation, LLC, Informational Filing, Docket No. AD25-15-000 (filed June 26, 2025).

necessary or appropriate."[18]  Constellation also noted that it and PJM have collaborated on an operating memo that governs the operating protocol of the Eddystone Units during the term of the Emergency Order (Operating Memo).  According to a summary of this Operating Memo published on PJM's website, PJM may schedule and dispatch the units:

> for reliability purposes to address . . . [a]n identified reliability need in support of the requirement to operate such facilities [i.e., the Eddystone Units] within established thermal, voltage and stability limits under Sections 2 and 3 of PJM Manual 3 and when such reliability needs cannot otherwise be met with available economically dispatched generating resources, [a] PJM reliability need caused by a system restoration need as described in PJM Manual 36, [and a] Capacity Emergency, as described in PJM Manual 13, during which PJM determines that the resources scheduled for an operating day are not sufficient to maintain the appropriate reserve levels for PJM.[19]

## II.    PJM Filing

7.      PJM states that, because it does not have a mechanism to recover costs associated with resources directed by the Secretary of Energy to maintain operations for resource adequacy purposes pursuant to FPA section 202(c), it is necessary for PJM to file a proposed cost allocation methodology with the Commission to effectuate the Emergency Order and to allow PJM to recover such costs.[20]  PJM proposes revisions to its RAA to establish the method by which PJM will allocate the costs incurred by Constellation to operate the Eddystone Units from June 1, 2025, to August 28, 2025, in compliance with the Emergency Order.  To this end, PJM proposes to add RAA, Article 7, section 2A (Responsibility to Pay 202(c) Charge):

> Each Party shall pay, as to the loads it serves during a Delivery Year, a 202(c) charge that is (1) associated with [the Eddystone Emergency Order], and (2) based on an agreement between the parties identified in such 202(c) order setting forth a rate for compensation using the formula rate

---

[18] *Id.* at 1.

[19] PJM Interconnection, L.L.C., *Eddystone 3 & 4 Unit Reporting & Commitment Process*, https://www.pjm.com/-/media/DotCom/committees-groups/committees/oc/ postings/20250612-eddystone-3-and-4-unit-reporting-and-commitment-process.pdf.

[20] Transmittal at 3.

methodology and processes based on the [Deactivation Avoidable Cost Credit (DACC)] set forth in Tariff, Part V, sections 114, 115, 116, 118, 118A with refinements to ensure recovery of incurred costs, including, but not limited to, maintenance and necessary repairs ("Order 202-25-4 Credit"). The foregoing 202(c) charge to each Load Serving Entity shall be equal to the monthly Order 202-25-4 Credit multiplied by each Load Serving Entity's pro rata share of the sum of the total Daily Unforced Capacity Obligations across all Zones in the PJM Region for all days within the calendar month covered by such [FPA] section 202(c) order.[21]

8.     PJM emphasizes that its proposal applies only to the costs associated with the Emergency Order (i.e., only to costs incurred by the Eddystone Units from June 1, 2025, through August 28, 2025).[22] PJM states that its proposal to allocate the costs of retaining the Eddystone Units among all Load Serving Entities in the PJM Region is just and reasonable because the Eddystone Units are being retained for resource adequacy purposes under the Emergency Order and not to meet localized transmission reliability needs (the only purpose for which PJM can retain generation units under Part V of its Tariff).[23] PJM also argues that the proposed cost allocation recognizes that the Emergency Order is based on the overall resource adequacy need in the PJM footprint, as opposed to past DOE orders that were based on more locational transmission needs.[24]

---

[21] PJM, Intra-PJM Tariffs, RAA, art. 7, § 2A (Responsibility to Pay 202(c) Chrg) (0.0.0).  PJM explains that a Load Serving Entity's Daily Unforced Capacity Obligation is its "capacity obligation" for a given Delivery Year.  Transmittal at 16.  PJM also notes that it will allocate the Eddystone Units' monthly Order No. 202-25-4 Credit on a pro rata basis regardless of whether a Load Serving Entity meets its obligation through the Fixed Resource Requirement or through Reliability Pricing Model Auctions.  *Id.* at 15.

[22] Transmittal at 5.  PJM states that its proposal is limited to the Emergency Order and that it intends to allow for further stakeholder discussion and review of these issues more generically should additional FPA section 202(c) orders either affecting the Eddystone Units or other units be issued in the future.  *Id.* at 6-7, 17.

[23] *Id.* at 15-16; PJM, Intra-PJM Tariffs, OATT, pt. V (Generation Deactivation) (0.0.0).

[24] Transmittal at 6.

9.      PJM states that its proposed tariff for Commission review does not include the DACC-based formula rate for calculating the costs to be allocated, which is described in the compensation agreement between PJM and Constellation.[25]  PJM states that, pursuant to FPA section 202(c) and DOE regulations, if the relevant parties agree to the rates that will apply to transactions associated with a DOE emergency order, then the Commission plays no role in approving those rates.[26]  PJM argues that, because it and Constellation agreed on the DACC-based formula rate, PJM does not need to obtain Commission approval.  PJM contends that the Commission recognized this fact in *San Diego Gas & Electric*, when the Commission held that FPA section 202(c) "provides no role for the Commission in the event the parties agree on the rates that will apply to the transactions."[27]  PJM also argues that, as the Commission has recognized, the DOE Referral to the Commission does not put the compensation agreement before the Commission.[28]

10.     PJM requests an effective date of June 1, 2025, and waiver of the Commission's 60-day prior notice requirement.[29]  PJM states that good cause exists to permit the requested effective date because June 1, 2025, was the first day the Eddystone Units were required to maintain operations under the Emergency Order.  PJM also argues that its request falls squarely within the notice exception to the filed rate doctrine because the May 30, 2025 Emergency Order provided notice that rate recovery is available to the Eddystone Units for compliance with the Emergency Order from June 1, 2025, to August

---

[25] *Id.* at 2, 5, 18.

[26] *Id.* at 11-12 (citing 16 U.S.C. § 824a(c)(1); 10 C.F.R. § 205.376).

[27] *Id.* at 12 (quoting *S.D. Gas & Elec. Co. v. Sellers of Energy & Ancillary Servs.*, 97 FERC ¶ 61,275, at 62,196 (2001) (*San Diego Gas & Elec.*)).

[28] *Id.* at 13-14 (citing DOE Referral at 2; Acknowledgment Order, 191 FERC ¶ 61,217 at PP 4, 6).

[29] *Id.* at 7 (citing 18 C.F.R. § 35.3(a)(1) (2024)).

28, 2025.[30]  Therefore, PJM asserts, any requested effective date after May 30, 2025, is, in essence, prospective.[31]

## III.  **Notice and Responsive Pleadings**

11.    Notice of PJM's filing was published in the *Federal Register*, 90 Fed. Reg. 28999 (July 2, 2025), with interventions and protests due on or before July 7, 2025.  Timely motions to intervene were filed by:  American Clean Power Association; Buckeye Power, Inc.; Calpine Corporation; Constellation Energy Generation, LLC (Constellation); Duke Energy Corporation;[32] Dominion Energy Services, Inc.;[33] East Kentucky Power Cooperative, Inc. (EKPC); Electric Power Supply Association; Environmental Defense Fund; Environmental Law and Policy Center; Exelon Corporation; FirstEnergy Service Company;[34] Illinois Citizens Utility Board; Illinois Municipal Electric Agency; LS Power Development, LLC; Maryland Office of People's Counsel; Monitoring Analytics, LLC, acting in its capacity as the Independent Market Monitor for PJM; Natural Resources Defense Council; New Jersey Division of Rate Counsel; North Carolina Electric Membership Corporation; Old Dominion Electric Cooperative; PJM Industrial Customer

---

[30] *Id.* at 8, 19 (citing *Consol. Edison Co. of N.Y., Inc. v. FERC*, 347 F.3d 964, 969 (D.C. Cir. 2003); *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 22-23 & n.1 (D.C. Cir. 2014) (explaining the notice and agreement exceptions); *El Paso Elec. Co.*, 189 FERC ¶ 61,019 (2024); Emergency Order, ordering paras. (E), (G)).  PJM states that on May 30, 2025, PJM sent to its members the Emergency Order, which is posted on the PJM website.  *Id.* at 7 n.20 (citing PJM Interconnection, L.L.C., *Order No. 202-25-4* (May 30, 2025), https://www.pjm.com/-/media/ DotCom/documents/ferc/orders/ 2025/2025050530-202-25-4.pdf).

[31] *Id.* at 19 (citing *ISO New England Inc.*, 148 FERC ¶ 61,185, at P 29 (2014); *ISO New England Inc.*, 145 FERC ¶ 61,095, at P 28 (2013)).

[32] Duke Energy Corporation moves to intervene on behalf of its franchised public utility affiliates, Duke Energy Business Services, LLC; Duke Energy Carolinas, LLC; Duke Energy Florida, LLC; Duke Energy Kentucky, Inc.; Duke Energy Ohio, Inc.; and Duke Energy Progress, LLC.

[33] Dominion Energy Services, Inc., moves to intervene on behalf of Virginia Electric and Power Company.

[34] FirstEnergy Service Company moves to intervene as agent for its franchised public utility affiliates The Cleveland Electric Illuminating Company, FirstEnergy Pennsylvania Electric Company, Jersey Central Power & Light Company, Monongahela Power Company, Ohio Edison Company, The Potomac Edison Company, and The Toledo Edison Company.

Coalition (PJMICC); PJM Power Providers Group; PSEG Companies;[35] Public Citizen, Inc.; Rockland Electric Company; Sierra Club; Solar Energy Industries Association; Southern Maryland Electric Cooperative, Inc.; Sustainable FERC Project; and Vistra Corp.  Out-of-time motions to intervene were filed by American Electric Power Service Corporation (AEPSC);[36] NextEra Energy Marketing, LLC (NextEra Energy Marketing); and NextEra Energy Resources, LLC (NextEra Energy Resources).

12.     On July 7, 2025, Constellation and EKPC filed comments, and Public Interest Organizations (PIO)[37] and PJMICC filed protests.  On July 18, 2025, PJM and Constellation filed answers to the protests.  On August 4, 2025, PJMICC filed an answer to the PJM and Constellation answers.  On August 6, 2025, PJM filed an answer to the PJMICC answer.

### A.     <u>Supportive Comments</u>

13.     Constellation supports PJM's filing and agrees with PJM that because Constellation and PJM have reached an agreement on the rate to calculate costs, Commission approval of that rate is not necessary.[38]  Constellation argues that its submission of an informational filing provides notice of the rate to which PJM and Constellation have agreed.  While supporting PJM's filing, EKPC urges the Commission not to espouse a broad principle that cost allocation for resources retained to meet resource adequacy needs must be socialized regionwide, as that would run counter to the locational nature of PJM's capacity market and would deter the need to ensure there are appropriate incentives for Load Serving Entities to meet their mutually agreed upon

---

[35] PSEG Companies are PSEG Energy Resources & Trade LLC, PSEG Power LLC, and Public Service Electric and Gas Company.

[36] AEPSC moves to intervene on behalf of its affiliates AEP Appalachian Transmission Company, Inc.; AEP Indiana Michigan Transmission Company, Inc.; AEP Kentucky Transmission Company, Inc.; AEP Ohio Transmission Company, Inc.; AEP West Virginia Transmission Company, Inc.; Appalachian Power Company; Indiana Michigan Power Company; Kentucky Power Company; Kingsport Power Company; Ohio Power Company; and Wheeling Power Company.

[37] PIOs are Environmental Defense Fund; Environmental Law & Policy Center; Illinois Citizens Utility Board; Natural Resources Defense Council; Public Citizen, Inc.; Sierra Club; and Sustainable FERC Project.

[38] Constellation Comments at 2 n.6.

obligations to share reserves under the RAA and not unreasonably lean upon other Load Serving Entities in the region.[39]

14.    PJMICC supports PJM's proposed cost allocation methodology on the condition that the Commission require that PJM include in its present filing or in an accelerated follow-on proceeding a request from PJM for Commission approval of the DACC approach to setting compensation for Constellation under the Emergency Order.[40] PJMICC also argues that the Commission should require PJM to file, in a subsequent FPA section 205 proceeding, tariff language to clarify PJM's responsibilities and process regarding cost recovery and cost allocation for future FPA section 202(c) emergency orders.[41]

### B.    Protests

15.    PIOs argue that PJM's cost allocation proposal violates the cost causation principle because there is no evidence that ratepayers across the PJM footprint will benefit from the Eddystone Units' continued operation.[42]  PIOs contend that although PJM states that its proposed methodology aligns with the "resource adequacy purposes" of the Emergency Order, consumers throughout PJM have already purchased more than enough capacity to meet PJM's resource adequacy standards for the 90-day period in which the Emergency Order will be in effect.[43]  PIOs argue that PJM's proposal therefore asks ratepayers to pay for something—resource adequacy—for which they have already paid.  PIOs assert that PJM ratepayers have no need for, and will not materially benefit

---

[39] EKPC Comments at 3 (citing *Meeting the Challenge of Res. Adequacy in Reg'l Transmission Org. & Indep. Sys. Operator Regions*, Initial Post-Technical Conference Comments of East Kentucky Power Cooperative, Docket No. AD25-7-000 (filed July 7, 2025) (discussing Load Serving Entities inappropriately leaning on PJM's capacity market resources instead of building and contracting for resources to meet their load obligations)).

[40] PJMICC Protest at 3, 14.

[41] *Id.* at 14.

[42] PIOs Protest at 8 (citing *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1368 (D.C. Cir. 2004) (Courts should "evaluate compliance [with the cost causation principle] by comparing the costs assessed against a party to the burdens imposed or benefits drawn by that party.")).

[43] *Id.* at 2, 4-5.  PIOs note that PJM's Base Residual Auction for the 2025/2026 Delivery Year cleared 135,684 MW of unforced capacity, representing a 18.6% reserve margin—0.8 percentage points higher than the target reserve margin of 17.8%.  *Id.* at 4.

from, this additional capacity.[44]  They argue that because PJM and DOE did not provide evidence that PJM ratepayers would otherwise benefit from the Eddystone Units' continued operation, the Commission cannot require them to pay the Eddystone Units' costs.[45]  PIOs contend that PJM provides no evidentiary support for its filing beyond the Emergency Order.

16.    PIOs assert that PJM's performance during the June 2025 heatwave underscores the fact that ratepayers have already obtained sufficient capacity.[46]  PIOs argue that PJM's dispatch of the Eddystone Units for 24 hours a day while it was exporting power to neighboring regions suggests that the beneficiaries of the Eddystone Units' continued operation may lie outside of PJM.

17.    PIOs further argue that contrary to PJM's proposal, the Emergency Order does not declare a resource adequacy emergency that applies to every load-serving entity in PJM.[47]  Instead, PIOs note, the order states that "an emergency exists *in portions of the electricity grid* operated by [PJM] due to a shortage of facilities for the generation of electric energy, resource adequacy concerns, *and other causes*."[48]  PIOs note that DOE's Referral to the Commission also contains language stating that "an emergency exists in portions of the electric grid operated by PJM."[49]  PIOs observe that the Referral further states that the Eddystone Units "shall not be counted as capacity resources."[50]  PIOs assert that neither DOE nor PJM's filing clarifies which "portions of the electric grid" are under a state of emergency or the precise cause of that emergency.

18.    PIOs contend that DOE and PJM must identify which portions of the PJM system are under emergency conditions requiring the Eddystone Units' continued operation, and they must explain the specific nature of that emergency, including the "other causes" referenced in the Emergency Order.[51]  PIOs argue that absent this information, the

---

[44] *Id.* at 9.

[45] *Id.* at 10.

[46] *Id.* at 9.

[47] *Id.* at 10.

[48] *Id.* (quoting Emergency Order at 1 (emphasis added)).

[49] *Id.* (quoting DOE Referral at 1).

[50] *Id.*

[51] *Id.* at 11.

Document Accession #: 20250815-3094     Filed Date: 08/15/2025

Commission cannot determine which ratepayers, if any, benefit from the Eddystone Units and, accordingly, cannot make a reasoned decision on the appropriate cost allocation. PIOs argue that any decision would necessarily be arbitrary, capricious, and contrary to law.

19.      Further, PIOs argue that PJM's stated intention to dispatch the Eddystone Units for purposes other than resource adequacy conflicts with its proposed cost allocation mechanism.[52]  PIOs state that PJM and Constellation have agreed in the Operating Memo that PJM may dispatch the units for system restoration and to support PJM system operation "within established thermal, voltage, and stability limits."[53]  PIOs state that PJM already has tariff provisions to allocate costs associated with generator retention to "maintain[] system operation within established thermal, voltage, and stability limits," as these are the kinds of transmission reliability needs that give rise to reliability-must-run (RMR) arrangements in PJM.[54]  PIOs note that the costs of such arrangements are allocated to consumers in the zone of the PJM transmission owners that will be assigned financial responsibility for the reliability upgrades necessary to alleviate the reliability impact of the RMR unit's retirement.  PIOs state that costs for Black Start Service in PJM—which they claim is equivalent to PJM and Constellation's system restoration basis for operating the Eddystone Units—are allocated to network service customers and point-to-point reservations, or zonally, depending on the circumstances.[55]  Thus, PIOs argue, the Operating Memo contemplates operation of the Eddystone Units for reasons unrelated to resource adequacy, and for a purpose already covered by an existing, Commission-approved cost allocation methodology.  PIOs contend that PJM nevertheless proposes to recover these costs from all load in PJM, rather than from a more local set of consumers. PIOs argue that PJM fails to explain how its proposed cost allocation methodology comports with cost causation principles given the various reasons that Eddystone Units may incur costs to run in response to PJM dispatch.

20.      PIOs and PJMICC disagree with PJM that the compensation agreement between PJM and Constellation is not under the Commission's jurisdiction and therefore does not need to be filed.[56]  They argue that PJM misreads FPA section 202(c) and the DOE regulations as limiting the Commission's jurisdiction, when those provisions instead

---

[52] *Id.*

[53] *Id.* at 11-12 (citing Operating Memo).

[54] *Id.* at 12 (citing PJM, Intra-PJM Tariffs, OATT, § V.113 (Notices), § V.113.2; Transmittal at 4).

[55] *Id.* (citing PJM, Intra-PJM Tariffs, OATT, Schedule 6A, §§ 25-26).

[56] PIOs Protest at 13-19; PJMICC Protest at 3-13.

expand the Commission's jurisdiction to situations in which the FPA might not otherwise apply (such as when the facilities involved are non-jurisdictional).[57]  They argue that PJM also misrepresents the Commission's finding in *San Diego Gas & Electric* because the relevant transactions in that proceeding occurred in the spot market according to the CAISO tariff.[58]  PIOs argue that pursuant to FPA sections 201 and 205, all wholesale electricity rates are reviewable by the Commission.[59]  PJMICC contends that absent such oversight, consumers will be defenseless against the potential for unjust and unreasonable rates through emergency arrangements.[60]  Finally, PIOs argue that under the cost causation principle, the Commission cannot determine that the benefits of a facility are proportional to its costs if the Commission cannot consider the costs.[61]

C.      **Answers**

21.      In response to PIOs' assertion that PJM erred in proposing a regionwide cost allocation, PJM argues that the Eddystone Units benefit all Load Serving Entities.[62]  PJM explains that the Eddystone Units are in the PECO Zone, an unconstrained transmission region from which generation resources may serve resource adequacy needs throughout the PJM Region.  In other words, PJM argues, the Eddystone Units are not limited to serving the PECO Zone by any transmission constraints and can provide resource adequacy in any Zone with sufficient import capability in the PJM Region.[63]  Further, PJM states that, had the Eddystone Units participated and cleared in the 2025/2026 Base Residual Auction, the resources would have received the unconstrained Rest-of-RTO clearing price.

---

[57] PIOs Protest at 14; PJMICC Protest at 6.

[58] PIOs Protest at 14-15; PJMICC Protest at 7-8.

[59] PIOs Protest at 13-14.

[60] PJMICC Protest at 3.

[61] PIOs Protest at 17.

[62] PJM July 18 Answer at 4.

[63] *Id.* at 4-5.

22.     PJM argues that the dispatch of the Eddystone Units during the June 2025 heatwave bolsters PJM's proposed cost allocation methodology.[64]  PJM states that on each day from June 23 to 25, PJM issued Maximum Generation (MaxGen) and NERC Energy Emergency Alert-1 (EEA-1) alerts for the entire PJM Region.  PJM explains that MaxGen and EEA-1 alerts are emergency notifications that all resources should be committed to prevent potential resource adequacy and reliability events.[65]  PJM states that pursuant to these alerts, the Eddystone Units ran on each day of the heatwave to support systemwide resource adequacy.[66]

23.     Constellation argues that PJM's dispatch of the Eddystone Units during the June heatwave does not support PIOs' contention that Eddystone could be dispatched "for purposes other than resource adequacy."[67]  Constellation asserts that PJM's dispatch during the June heatwave aligns precisely with the Emergency Order by helping maintain resource adequacy during extreme conditions.  Constellation argues that even if PJM dispatches the Eddystone Units to maintain grid stability or as part of a black start, the Secretary of Energy did not limit dispatch only to resource adequacy events, instead including any "parameters determined by PJM for reliability purposes."[68]

24.     In response to PIOs' argument that PJM must identify the "portions of the electric grid operated by PJM" referred to in the Emergency Order, PJM argues that PIOs' interpretation of an isolated phrase in the Emergency Order cannot be reconciled with statements elsewhere in the Emergency Order that PJM's entire "system" or "service territory" faces growing resource adequacy concerns.[69]  Constellation contends that PIOs call for more intricate and finer-grained methods of allocating costs, but FPA section 205 does not require the Commission to "take such a hyper-granular approach to weighting

---

[64] *Id.* at 5.

[65] *Id.* (citing PJM Interconnection, L.L.C., *PJM's Emergency Procedures and Messages* 2 (Jan. 29, 2025), https://www.pjm.com/-/media/DotCom/about-pjm/newsroom/fact-sheets/pjms-emergency-procedures-and-messages.ashx (explaining that these alerts are issued "when a grid operator foresees or is experiencing conditions where all available resources are committed to meet electricity load, firm transactions, and reserve commitments, and is concerned about sustaining its required contingency reserves")).

[66] *Id.* at 5-6.

[67] Constellation Answer at 10 (citing PIOs Protest at 2).

[68] *Id.* (quoting Emergency Order at 3).

[69] PJM July 18 Answer at 6 (citing Emergency Order at 1).

costs and benefits," particularly in responding to an emergency and where the Secretary of Energy did not specifically exclude any area from the emergency.[70]

25.     In response to PIOs' assertion that PJM ratepayers have no need for additional capacity and thus will not benefit from the continued operation of the Eddystone Units, PJM argues that PIOs ignore the fact that, absent the Emergency Order, the resources would have been deactivated, which would have reduced available capacity within the PJM footprint and exacerbated resource adequacy issues.[71]  In addition, PJM states that the Emergency Order recognizes that resource adequacy concerns are not limited to one delivery year.[72]

26.     PJM argues that Commission precedent supports the principle that issues pertaining to actual costs are beyond the scope of FPA section 205 proceedings addressing only cost allocation.[73]  Constellation and PJM emphasize that the only question before the Commission is whether PJM's proposed cost allocation is just and reasonable, and all other issues are beyond the scope of this proceeding.[74]  In response to these arguments, PJMICC continues to develop its arguments regarding whether the Commission has the authority to review the compensation agreement between PJM and

---

[70] Constellation Answer at 10 (quoting *Paragould Light & Water Comm'n v. FERC*, No. 23-1133, 2025 WL 1911460, at *4 (D.C. Cir. July 11, 2025)).

[71] PJM July 18 Answer at 6-7.

[72] *Id.* at 7 (citing Emergency Order at 1 (noting that "[t]hrough 2030, PJM anticipates reliability risk from increasing electricity demand, generator retirement outpacing new resource construction, and characteristics of resources in PJM's interconnection queue")).

[73] *Id.* at 11 (citing *Potomac-Appalachian Transmission Highline, L.L.C.*, 122 FERC ¶ 61,188, at PP 151-152 (2008) (finding that a protest "is outside the scope of this [formula rate] proceeding, and is a collateral attack on the Commission's order" in the separate cost allocation proceeding); *Entergy Ark., Inc.*, 171 FERC ¶ 61,037, at PP 7-9 (2020) (denying request for rehearing where party sought reconsideration of the reasonableness of Control Center costs and overall rate increase because Commission's "review of the Ownership Agreement in this proceeding under section 205 of the FPA is instead limited to the reasonableness of the provisions that establish the allocation of ownership interests and the specific terms under which Entergy Services will continue to provide services related to the Control Centers")).

[74] Constellation Answer at 2; PJM July 18 Answer at 2-4, 7-12, 17-19.

Constellation.[75]  In turn, PJM disagrees with PJMICC, while also maintaining that PJMICC's arguments are beyond the scope of this proceeding.[76]

## IV.  Discussion

### A.  Procedural Matters

27.    Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2024), the timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.[77]

28.    Pursuant to Rule 214(d) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214(d), we grant the late-filed motions to intervene of AEPSC, NextEra Energy Marketing, and NextEra Energy Resources given their interest in the proceeding, the early stage of the proceeding, and the absence of undue prejudice or delay.

29.    Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2024), prohibits an answer to a protest or answer unless otherwise ordered by the decisional authority.  We accept the answers filed by Constellation, PJM, and PJMICC because they have provided information that assisted us in our decision-making process.

### B.  Substantive Matters

30.    We accept PJM's proposed revisions to RAA, Article 7, section 2A to establish the method by which PJM will allocate the costs incurred by Constellation to continue to operate the Eddystone Units pursuant to the Emergency Order as just and reasonable, to be effective June 1, 2025, as requested, for the reasons discussed below.

---

[75] PJMICC Answer at 3-11.

[76] PJM August 6 Answer at 3-7.

[77] Entities that filed comments or protests but did not file a notice of intervention or motion to intervene are not parties to this proceeding.  *See* 18 C.F.R. § 385.211(a)(2) (2024) ("The filing of a protest does not make the protestant a party to the proceeding. The protestant must intervene under Rule 214 to become a party.").

31.     The DOE Organization Act gives the Secretary of Energy the authority pursuant to section 202(c) of the FPA that had been previously granted to the Federal Power Commission.[78]  Responsibilities pursuant to section 202(c) include taking action to address an energy emergency:

> (c) Temporary connection and exchange of facilities during emergency
> (1) … [W]henever the Commission determines that an emergency exists by reason of a sudden increase in the demand for electric energy, or a shortage of electric energy or of facilities for the generation or transmission of electric energy, or of fuel or water for generating facilities, or other causes, the Commission shall have authority, either upon its own motion or upon complaint, with or without notice, hearing, or report, to require by order such temporary connections of facilities and such generation, delivery, interchange, or transmission of electric energy as in its judgment will best meet the emergency and serve the public interest.[79]

Section 202(c)(1) also provides for affected parties to agree on terms, and if that fails, then, after a hearing, terms may be prescribed as follows:

> If the parties affected by such order fail to agree upon the terms of any arrangement between them in carrying out such order, the Commission, after hearing held either before or after such order takes effect, may prescribe by supplemental order such terms as it finds to be just and reasonable, including the compensation or reimbursement which should be paid to or by any such party.[80]

---

[78] 42 U.S.C. § 7151.

[79] 16 U.S.C. § 824a(c)(1).  Section 202(c)(4)(A) further provides that a Commission order can be renewed, for another 90 days each time, as necessary to meet the emergency and serve the public interest.  16 U.S.C. § 824a(c)(4)(A).

[80] 16 U.S.C. § 824a(c)(1).

32.     Section 205.376 of DOE's regulations provides that DOE will refer compensation issues to this Commission where parties cannot agree on terms.[81]  As noted above, the Secretary of Energy referred certain rate issues to this Commission on June 17, 2025.

33.     The Commission's rate analysis applies the cost causation principle, which requires that "all approved rates reflect to some degree the costs actually caused by the customer who must pay them."[82]  We find that this is the relevant legal standard for evaluating whether the proposed method to allocate the costs of keeping the Eddystone Units in operation, in response to the Emergency Order, is just and reasonable.  Courts have explained that, to "the extent that a utility benefits from the costs of new facilities, it may be said to have 'caused' a part of those costs to be incurred, as without the expectation of its contributions the facilities might not have been built, or might have been delayed."[83]  As a result, a cost allocation method can satisfy the cost causation principle if the Commission "has an articulable and plausible reason to believe that the benefits are at least roughly commensurate with" the allocation of the costs.[84]

34.     We agree with PJM that its governing documents do not provide a method by which PJM can allocate the costs incurred by generation units retained for resource adequacy pursuant to FPA section 202(c).  Part V of the Tariff[85] addresses only the situation in which PJM requests that an RMR resource operate beyond its deactivation date to address a transmission reliability issue.  In that situation, PJM allocates the RMR costs to the same Load Serving Entities that pay for the transmission upgrade to address the transmission reliability issue.

35.     In applying the cost causation principle here, we find that it is just and reasonable for the cost allocation method to allocate costs in accordance with the scope of the emergency as described by the Emergency Order.  PJM proposes to allocate the costs incurred by Constellation during the 90-day period from June 1, 2025, to August 28, 2025, to all Load Serving Entities in the PJM Region in proportion to their Daily Unforced Capacity Obligations.  We agree with PJM that the proposed cost allocation recognizes that the Emergency Order is based on the overall resource adequacy need in the PJM footprint.  The Emergency Order describes an "Emergency Situation," referring to PJM's own public statements and regulatory filings, which reflect a "growing resource

---

[81] 10 C.F.R. § 205.376.

[82] *KN Energy, Inc. v. FERC*, 968 F.2d 1295, 1300 (D.C. Cir. 1992).

[83] *Ill. Com. Comm'n v. FERC*, 576 F.3d 470, 476 (7th Cir. 2009).

[84] *Id.* at 477.

[85] PJM, Intra-PJM Tariffs, OATT, pt. V (Generation Deactivation) (0.0.0).

adequacy concern" for the entire PJM Region.[86]  The Emergency Order also states that the retirement of the Eddystone Units would "further decrease available dispatchable generation within PJM's service territory."[87]  These statements support a finding that the retention of the Eddystone Units benefits the PJM Region in general.

36.    We find unconvincing PIOs' argument that the Emergency Order does not support PJM's proposed regionwide cost allocation.  PIOs question allocating costs regionwide, citing the Emergency Order's statement "that an emergency exists in *portions of the electricity grid operated by [PJM]* due to a shortage of facilities for the generation of electric energy, resource adequacy concerns, and *other causes*" (emphasis added).[88]  We find that the most reasonable reading of the Emergency Order's intended scope is that the emergency necessitating the continued operation of the Eddystone Units is in the entire PJM Region.  As discussed above, the Emergency Order makes findings that the emergency is regionwide and does not identify in greater detail particular portions of the system or other causes.

37.    PIOs also assert that PJM was required to provide additional evidentiary support that PJM ratepayers will benefit from the Eddystone Units' continued operation.  However, the Emergency Order does not require PJM to make such a demonstration.  As PJM's proposal for regionwide cost allocation corresponds to the scope of the emergency identified by DOE, we do not see a need for a hearing on whether a more particularized allocation is necessary.

38.    We also disagree with PIOs that PJM undermines its proposed cost allocation method by stating that it may use the Eddystone Units for system restoration service and to maintain transmission reliability.  PIOs argue that if PJM uses the Eddystone Units for these other services, PJM's proposed cost allocation methodology should be more in line with the existing cost allocation methodologies for those other services.  We find, however, that PJM's use of the Eddystone Units for transmission reliability and system restoration is consistent with the finding in the Emergency Order that an emergency exists in the entire PJM Region.  Moreover, in a situation in which the units may be used

---

[86] Emergency Order at 1-2.

[87] *Id.* at 2.

[88] *Id.* at 1.  We note that the Emergency Order does not restrict the geographical area when stating:  "The potential shortage of electric energy, shortage of facilities for the generation of electric energy, and other causes *in the region* support the need for the Eddystone Units to contribute to system reliability."  *Id.* at 2 (emphasis added).

for multiple services, cost allocation does not need to be so precise that it allocates costs for specific uses.[89]

39.     We are unpersuaded by PIOs' assertion that we must evaluate the costs to be allocated before evaluating PJM's proposal to allocate those costs.  As PJM notes, the Commission has previously found that it can evaluate a cost allocation method without first knowing the costs to be allocated.[90]  We make the same finding here because the Eddystone Units' costs of operation are not relevant to our finding that PJM's cost allocation proposal is just and reasonable.

40.     We find all other issues raised by parties, such as cost allocation for future FPA section 202(c) emergency orders and whether the compensation agreement between Constellation and PJM must be filed with the Commission,[91] to be beyond the scope of this proceeding on PJM's proposed RAA revisions and therefore do not address them.

---

[89] *Midwest ISO Transmission Owners v. FERC*, 373 F.3d at 1369 ("not surprisingly, we have never required a ratemaking agency to allocate costs with exacting precision") (citing *Sithe/Independence Power Partners, L.P. v. FERC*, 285 F.3d 1, 5 (D.C. Cir. 2002) ("FERC is not bound to reject any rate mechanism that tracks the cost-causation principle less than perfectly")); *see also Ill. Com. Comm'n v. FERC*, 576 F.3d at 477 ("We do not suggest that the Commission has to calculate benefits to the last penny, or for that matter to the last million or ten million or perhaps hundred million dollars.") (citation omitted).

[90] PJM July 18 Answer at 11 (citing *Potomac-Appalachian Transmission Highline, L.L.C.*, 122 FERC ¶ 61,188 at PP 151-152; *Entergy Ark., Inc.*, 171 FERC ¶ 61,037 at PP 7-9); *see also Old Dominion Elec. Coop. v. Va. Elec. & Power Co.*, 164 FERC ¶ 61,006, at P 45 (2018) (affirming that the Commission had set for hearing only the amount of costs after determining the proper allocation of those costs).

[91] *See* 16 U.S.C. § 824a(c)(1) (addressing how all "parties affected by" a DOE section 202(c) order may agree upon the terms of any arrangement between them in carrying out such order, as well as procedures for where those parties fail to agree upon such terms); *see also* 10 C.F.R. § 205.376.

<u>The Commission orders</u>:

PJM's proposed revisions to the RAA are hereby accepted, effective June 1, 2025, as discussed in the body of this order.

By the Commission.

( S E A L )

Debbie-Anne A. Reese,
Secretary.

Document Accession #: 20250815-3094          Filed Date: 08/15/2025

<u>APPENDIX</u>

PJM Interconnection, L.L.C.
Intra-PJM Tariffs

Tariff Records Effective June 1, 2025

[RAA Article 7 Sec 2A, RAA Article 7 Section 2A - Responsibility to Pay 202(c) Chrg (0.0.0),](http://etariff.ferc.gov/TariffSectionDetails.aspx?tid=1731&sid=359539) http://etariff.ferc.gov/TariffSectionDetails.aspx?tid=1731&sid=359539

Document Content(s)

ER25-2653-000.docx....................................................1

# Exhibit B

193 FERC ¶ 61,229
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Laura V. Swett, Chairman;
David Rosner, Lindsay S. See,
Judy W. Chang, and David LaCerte.

| | |
|---|---|
| PJM Interconnection, L.L.C. | Docket Nos.  ER25-2653-001 |
| United States Department of Energy | AD25-15-001 |

ORDER ADDRESSING ARGUMENTS RAISED ON REHEARING

(Issued December 22, 2025)

1.     On August 15, 2025, the Commission issued an order[1] accepting proposed revisions submitted by PJM Interconnection, L.L.C. (PJM), pursuant to section 205 of the Federal Power Act (FPA),[2] to its Reliability Assurance Agreement Among Load Serving Entities (RAA).[3]  The revisions establish the method by which PJM will allocate the costs incurred by Constellation Energy Generation, LLC (Constellation) to continue to operate Eddystone Units 3 and 4 (Eddystone Units) for 90 days beyond the units' planned deactivation date, in compliance with an emergency order issued by United States Department of Energy (DOE) under FPA section 202(c).[4]  The Public Interest Organizations (PIO) sought rehearing.[5]

---

[1] *PJM Interconnection, L.L.C.*, 192 FERC ¶ 61,159 (2025) (Cost Allocation Order).

[2] 16 U.S.C. § 824d.

[3] Capitalized terms that are not defined in this order have the meaning specified in the RAA or PJM's Open Access Transmission Tariff (Tariff).

[4] 16 U.S.C. § 824a(c).

[5] PIOs are: Environmental Law & Policy Center, Natural Resources Defense Council, Sustainable FERC Project, Sierra Club, and the Environmental Defense Fund.

2.      Pursuant to *Allegheny Defense Project v. FERC*,[6] the rehearing request filed in this proceeding may be deemed denied by operation of law.  However, as permitted by section 313(a) of the FPA,[7] we are modifying the discussion in the Cost Allocation Order and continue to reach the same result in this proceeding, as discussed below.[8]  We also deny PIOs' request for stay.

## I.      <u>Background</u>

3.      Constellation's Eddystone Units are dual-fuel generation units, each with a nameplate capacity of 380 megawatts, located in Eddystone, Pennsylvania.[9]  On December 1, 2023, Constellation provided PJM notice of its intent to deactivate the Eddystone Units, effective May 31, 2025.  PJM approved Constellation's request on February 27, 2024.[10]

4.      On May 30, 2025, pursuant to FPA section 202(c) and section 301(b) of the DOE Organization Act,[11] DOE issued Order No. 202-25-4 (Emergency Order).[12]  In the Emergency Order, the Secretary of Energy determined that "an emergency exists in portions of the electricity grid operated by [PJM] due to a shortage of facilities for the generation of electric energy, resource adequacy concerns, and other causes, and that

---

[6] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[7] 16 U.S.C. § 825*l*(a) ("Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.").

[8] *Allegheny Def. Project*, 964 F.3d at 16-17.  The Commission is not changing the outcome of the Cost Allocation Order.  *See Smith Lake Improvement & Stakeholders Ass'n v. FERC*, 809 F.3d 55, 56-57 (D.C. Cir. 2015).

[9] PJM Initial Transmittal at 9-10.

[10] *Id*. at 5-6.

[11] 42 U.S.C. § 7151(b).

[12] U.S. Dept. of Energy, May 30, 2025 Emergency Order No. 202-25-4, https://www.energy.gov/sites/default/files/2025-05/Federal%20Power%20Act %20Section%20202%28c%29%20PJM%20Interconnection.pdf.

issuance of this Order will meet the emergency and serve the public interest."[13] Therefore, the Secretary of Energy directed PJM and Constellation to "take all measures necessary to ensure that [the] Eddystone Units are available to operate" from the date the Emergency Order was issued until August 28, 2025.[14]  The Secretary of Energy directed PJM and Constellation to file with this Commission any tariff revisions or waivers necessary to effectuate the Emergency Order, with rate recovery available pursuant to FPA section 202(c).[15]

5.      On June 17, 2025, the Secretary of Energy referred the rate issues related to the Emergency Order to the Commission, pursuant to 10 C.F.R. § 205.376 (2025).[16]  The Referral noted that, on June 13, 2025, PJM submitted a report to DOE in which PJM stated:

> PJM and [Constellation] agree that the Facility will be compensated at a rate that is equivalent to the Deactivation Avoidable Cost Credit ("DACC"), determined in accordance with relevant provisions of Tariff, Part V, Sections 114, 115, 116, 118 and 118A ("the DACC Terms"), provided, however, that PJM's payment obligation shall be contingent on [Commission] approval of a cost allocation methodology that allows PJM to collect [Constellation's] compensation from market participants.  PJM also understands that it is [Constellation's] intent to make an informational filing with the [Commission], which is not subject to approval, offering additional information about the rate.[17]

---

[13] Emergency Order at 1.

[14] *Id.* at 2, ordering paras. (A), (G).

[15] *Id.*, ordering para. (E).  On September 26, 2025, the Natural Resources Defense Council, the Environmental Defense Fund, the Clean Air Task Force, and the Sierra Club Environmental Law Program appealed the DOE Order in the D.C. Circuit.  The proceeding remains pending.  *Nat. Resources Defense Council v. U.S. Dep't of Energy,* Case No. 25-1194 (D.C. Cir. docketed Sept. 26, 2025).

[16] U.S. Dep't of Energy, Referral to the Federal Energy Regulatory Commission, Docket No. AD25-15-000 (filed June 17, 2025) (Referral).

[17] Referral at 1-2.

The Referral also noted that PJM planned to submit a cost allocation methodology to the Commission, pursuant to FPA section 205.[18]  The Referral stated, "[g]iven the parties have identified outstanding rate issues, and pursuant to [FPA section 202(c)] and 10 C.F.R. § 205.376 and in furtherance of the [Emergency Order], this matter is hereby referred to the Commission."[19]  The Referral further noted that "DOE is not referring to the Commission any other matters, including, but not limited to, DOE's finding of an emergency, the prescription of conditions of service, or any other matter arising from DOE's exercise of its authority under section 202(c)."[20]  The Referral requested that the Commission "conduct such proceedings as it determines to be appropriate and issue a final order resolving the rate issues as discussed [therein]."[21]

### A.     <u>Cost Allocation Order</u>

6.     PJM proposed to allocate the costs incurred by Constellation during the 90-day period from June 1, 2025, to August 28, 2025, to all Load Serving Entities in the PJM Region in proportion to their Daily Unforced Capacity Obligations.[22]  In the Cost Allocation Order, the Commission accepted PJM's proposed revisions to RAA, Article 7, section 2A, to establish the method by which PJM will allocate the costs incurred by Constellation to continue to operate the Eddystone Units pursuant to the Emergency Order.[23]  To evaluate whether PJM's proposal was just and reasonable, the Commission applied the cost causation principle, which requires that "all approved rates reflect to

---

[18] *Id.* at 2 (citing PJM Interconnection, L.L.C., *PJM Report in Compliance with Ordering Paragraph D of the Department of Energy's May 30, 2025 Order No. 202-25-4*, at 3 & n.3 (June 2025), https://www.pjm.com/-/media/DotCom/committees-groups/cifp-doe-ca/postings/cifp-doe-pjm-report-on-compliance-with-eddystone.pdf).

[19] *Id.*

[20] *Id.*

[21] *Id.* at 1.

[22] PJM, Intra-PJM Tariffs, RAA, art. 7, § 2A (Responsibility to Pay 202(c) Chrg) (0.0.0).  PJM explains that a Load Serving Entity's Daily Unforced Capacity Obligation is its "capacity obligation" for a given Delivery Year.  PJM September 18, 2025 Transmittal at 16.

[23] Cost Allocation Order, 192 FERC ¶ 61,159 at P 30.

some degree the costs actually caused by the customer who must pay them."[24]   The Commission found that "a cost allocation method can satisfy the cost causation principle if the Commission 'has an articulable and plausible reason to believe that the benefits are at least roughly commensurate with' the allocation of the costs."[25]   The Commission found that "it is just and reasonable for the cost allocation method to allocate costs in accordance with the scope of the emergency as described by the Emergency Order."[26]   The Commission stated that "the proposed cost allocation recognizes that the Emergency Order is based on the overall resource adequacy need in the PJM footprint… which reflect[s] a 'growing resource adequacy concern' for the entire PJM Region."[27]

7.      In response to arguments that if the Eddystone Units are used for other services (such as transmission reliability and system restoration), PJM's proposed cost allocation method should instead rely on existing cost allocation methods for such services, the Commission found that PJM's proposed cost allocation was consistent with the finding in the Emergency Order that an emergency exists in the entire PJM Region.[28]   Moreover, the Commission found that "in a situation in which the units may be used for multiple services, cost allocation does not need to be so precise that it allocates costs for specific uses."[29]

---

[24] *Id.* P 33 (citing *KN Energy, Inc. v. FERC*, 968 F.2d 1295, 1300 (D.C. Cir. 1992)).

[25] *Id.* (citing *Ill. Com. Comm'n v. FERC*, 576 F.3d 470, 477 (7th Cir. 2009)).

[26] *Id.* P 35.

[27] *Id.* (citing Emergency Order at 1-2).

[28] *Id.* P 38.

[29] *Id.* (citing *Midwest ISO Transmission Owners v. FERC*, 373 F.3d at 1369 ("not surprisingly, we have never required a ratemaking agency to allocate costs with exacting precision") (citing *Sithe/Independence Power Partners, L.P. v. FERC*, 285 F.3d 1, 5 (D.C. Cir. 2002) ("FERC is not bound to reject any rate mechanism that tracks the cost causation principle less than perfectly")); *see also Ill. Com. Comm'n v. FERC*, 576 F.3d at 477 ("We do not suggest that the Commission has to calculate benefits to the last penny, or for that matter to the last million or ten million or perhaps hundred million dollars.") (citation omitted)).

8.      The Commission also stated that it can evaluate a cost allocation method without first knowing the costs to be allocated, and that, as applied here, the Commission can make the same finding "because the Eddystone Units' costs of operation are not relevant to our finding that PJM's cost allocation proposal is just and reasonable."[30]

9.      Finally, the Commission dismissed other issues raised by parties, such as cost allocation for future FPA section 202(c) emergency orders and whether the compensation agreement between Constellation and PJM must be filed with the Commission, as beyond the scope of the proceeding, which dealt only with the proposed cost allocation for the Eddystone Units.[31]

## B.      Request for Rehearing and Subsequent Filings

10.     On rehearing, PIOs argue that the Cost Allocation Order is contrary to cost allocation principles because there was no need for additional capacity in the summer of 2025.[32]  PIOs also allege that the Commission erred by failing to consider that PJM may dispatch the Eddystone Units for non-resource-adequacy services for which PJM already had a different, more local cost allocation framework.[33]  PIOs also request a stay of the Cost Allocation Order pending the resolution of potential challenges to the Emergency Order.[34]

11.     PJM Industrial Customer Coalition (PJMICC) filed a request for clarification or, in the alternative, rehearing of the Cost Allocation Order.  On November 6, 2025, PJMICC filed a notice of withdrawal of its pleading.

12.     On September 30, 2025, PJM filed a motion for leave to answer and answer in response to PIOs' and PJMICC's requests for rehearing.

---

[30] *Id.* P 39.

[31] *Id.* P 40.

[32] PIOs Rehearing Request at 2-6.

[33] *Id.* at 2, 3, 6-8.

[34] *Id.* at 2, 8-9.

## II.    Discussion

### A.    Procedural Matters

13.    The Commission's Rules of Practice and Procedure[35] prohibit answers to a request for rehearing.  Accordingly, we deny PJM's September 30, 2025, motion to answer and reject PJM's answer to the rehearing requests.

### B.    Substantive Matters

14.    We are unpersuaded by PIOs' rehearing arguments, and we therefore sustain the Commission's findings in the Cost Allocation Order.  We also deny PIOs' request for a stay of this proceeding.

#### 1.    Request for Rehearing

15.    On rehearing, PIOs argue that the Cost Allocation Order violates cost causation principles because it allocates costs to PJM utilities—and by extension their customers—who receive no material benefit from the continued operation of the Eddystone Units.[36]

16.    PIOs argue that the cost allocation violates cost causation principles because PJM's Reliability Pricing Model (RPM) procured adequate capacity in the PJM footprint during the duration of the Emergency Order.[37]  Specifically, PIOs contend that, during the June 2025 heatwave, PJM exported its energy to neighboring regions, thus demonstrating adequate capacity.[38]  PIOs therefore claim that there is no resource adequacy benefit from the Cost Allocation Order during the relevant 90-day period and that customers had already paid for sufficient capacity through the RPM.[39]

---

[35] 18 C.F.R. § 385.713(d)(1) (2025).  PJM's motion is also moot to the extent it responds to PJMICC's withdrawn request for clarification and alternative request for rehearing.

[36] *Id.* at 1-2, 3-4.

[37] *Id.* at 4, 7-8; *id.* at 4 (arguing that the unforced capacity PJM procured for the 2025-2026 delivery year represented an 18.6% reserve margin, above the 17.8% target reserve margin).

[38] *Id.* at 5.

[39] *Id.* at 4-5.

17.     PIOs state that the Commission relied on the fact that the actual costs to be allocated are beyond the scope of this proceeding, even though the cost causation principle did not require the Commission to determine whether the costs were just and reasonable, only whether the costs were allocated roughly commensurate with benefits.[40] PIOs contend that the PJM utilities and their customers did not receive any material benefit from the costs allocated to them, regardless of the magnitude of those costs.[41] Thus, PIOs argue that the Cost Allocation Order violates cost causation principles regardless of whether the costs of the Emergency Order were prudent.[42]  In other words, PIOs contend that cost causation principles require the Commission to analyze whether the customers allocated those costs actually benefited.[43]

18.     PIOs explain that because there was enough capacity for summer 2025, the only potential benefits of running the Eddystone Units would have been for local reliability purposes.[44] PIOs argue that, to the extent PJM operates the Eddystone Units to meet local reliability needs, allocating those costs across the entire PJM footprint is unjust and unreasonable.[45]  Specifically, PIOs state that the Commission improperly found that PJM's proposed cost allocation for the Eddystone Units across the entire PJM footprint is just and reasonable even though the Eddystone Units may be used for local transmission needs.[46]  PIOs explain that PJM already has a cost allocation methodology for allocating the costs of generating units retained to meet local reliability needs, and that under that methodology, costs are allocated only to those utilities and customers that receive the localized benefits.[47]

19.     PIOs argue that while PJM justifies its proposed cost allocation methodology because the Eddystone Units are being retained for resource adequacy purposes and *not* to meet localized transmission reliability needs, that justification is contradicted by PJM's

---

[40] *Id.* at 5.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 8.

[45] *Id.* at 4, 6.

[46] *Id.*

[47] *Id.* at 6, 8 (citing PJM, Intra-PJM Tariffs, OATT, Part V, § 113.2 (Notice of Reliability Impact) (3.0.0)).

memorandum governing the operating protocol of the Eddystone Units during the term of the Emergency Order (Operating Memo),[48] which states that PJM can dispatch the units for local reliability purposes (including for system restoration and to support PJM system operation "within established thermal, voltage, and stability limits").[49]

20.    PIOs take issue with the Commission's finding in the Cost Allocation Order that "cost allocation does not need to be so precise that it allocates costs for specific uses."[50] While PIOs agree that cost allocation can be "less than perfect," they argue that cost allocation should allocate costs to beneficiaries in a manner roughly commensurate with the benefits they receive, and that it requires some type of evidence.[51]    PIOs argue that, in this instance, PJM has not presented any evidence showing to what extent the Eddystone Units are necessary for resource adequacy compared to local reliability.[52]    PIOs explain that the Commission missed the point in the Cost Allocation Order when finding "that PJM's use of the Eddystone Units for transmission reliability and system restoration is consistent with the finding in the Emergency Order that an emergency exists in the entire PJM Region."[53]    Instead, PIOs contend that the critical question is whether PJM's proposed cost allocation is consistent with the uses of the Eddystone Units.[54]    PIOs argue that PJM failed to meet its burden of proof because PJM's Operating Memo allows PJM to use the Eddystone Units for local reliability purposes, and PJM provided no further evidence regarding the actual uses of the Eddystone Units.[55]    Thus, PIOs argue that the Commission erred in concluding that the proposed cost allocation is just and reasonable

---

[48] PIOs explain that "[t]he complete [Operating Memo] has not been posted publicly, but PJM has provided a summary of it."  PIOs Rehearing Request at 6 n.21 (citing Eddystone 3 and 4 Unit Reporting and Commitment Process, https://www.pjm.com/-/media/DotCom/committees-groups/committees/oc/postings/20250612-eddystone-3-and-4-unit-reporting-and-commitment-process.pdf).

[49] *Id*. at 6.

[50] *Id.* at 7 (citing Cost Allocation Order, 192 FERC ¶ 61,159 at P 38).

[51] *Id.*

[52] *Id.*

[53] *Id.* (citing Cost Allocation Order, 192 FERC ¶ 61,159 at P 38).

[54] *Id.*

[55] *Id.*

because its conclusion was not based on evidence and instead focused on what the emergency may or may not permit.[56]

21.     PIOs argue that even if the Commission finds some resource adequacy benefits accruing to all PJM utilities and their customers, PJM has not claimed that it would be impossible or even difficult to allocate the costs to the proper beneficiaries depending on whether the Eddystone Units are used for resource adequacy or local transmission needs.[57]  PIOs claim that neither PJM nor the Commission made any attempt to identify the extent of the benefits for those purposes.[58]

22.     On rehearing, PIOs state that some PIOs and other parties have challenged similar DOE orders in the United States Court of Appeals for the District of Columbia Circuit, and it is possible that a party may challenge the Emergency Order.[59]  PIOs state that, if any of these challenges were to be successful, the Cost Allocation Order would be meritless and refunds would be necessary.[60]  Therefore, PIOs request that the Commission stay this proceeding until any period to challenge the order has lapsed or such proceedings are resolved.[61]

## 2.     <u>Commission Determination</u>

23.     We remain unpersuaded by PIOs' arguments.

24.     First, we find that the issue of whether additional capacity is needed remains outside the scope of this proceeding, which only concerns whether PJM's proposed cost

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] PIOs Rehearing Request at 8.  PIOs also contend that the Commission's approval of PJM's cost allocation proposal sets a bad precedent for future proceedings or similar emergency orders, including a recently issued order by DOE for the Eddystone Units to remain open for an additional 90 days.  *See* U.S. Dept. of Energy, Aug. 27, 2025 Emergency Order No. 202-25-8, https://www.energy.gov/sites/default/files/2025-08/202c%20Order%20No.%20202-25-8.pdf.

[60] PIOs Rehearing Request at 8-9.

[61] *Id.*

allocation method was just and reasonable.[62]  Under the DOE Organization Act, the determination of the need for the operation of the Eddystone Units rests solely with DOE; the Commission's responsibility is to provide for "compensation or reimbursement" of the costs of operation.[63]  We therefore reject PIOs' argument on this point.

25.    We summarily dismiss PIOs' remaining arguments.  PIOs continue to assert that PJM's proposed cost allocation method is unjust and unreasonable[64] because it violates cost causation principles.[65]  Specifically, PIOs continue to argue that PJM did not analyze whether customers allocated the costs from the continued operation of the Eddystone Units benefit from their continued operation.[66]  PIOs also continue to argue that the proposed cost allocation method fails to account for the possibility that the Eddystone Units may be dispatched to resolve local transmission needs,[67] and is therefore inconsistent with the stated use of the Eddystone Units,[68] because PJM did not demonstrate to what extent the Eddystone Units are necessary for resource adequacy compared to local reliability.[69]  These arguments were addressed in the Cost Allocation Order, and we remain unpersuaded by these arguments for the same reasons as stated in the Cost Allocation Order.  There, the Commission found that PJM's proposal for regionwide cost allocation corresponds to the scope of the emergency identified in the DOE Order (which found that the emergency is regionwide without specifying in greater detail any particular portions of the system), and the benefits derived from the continued

---

[62] *See* Cost Allocation Order, 192 FERC ¶ 61,159 at PP 30, 40.

[63] 42 U.S.C. § 7151(b); 16 U.S.C. § 824a(c); 10 C.F.R. § 205.376 (2025).

[64] *Compare* PIOs Rehearing Request at 4 *with* Cost Allocation Order, 192 FERC ¶ 61,159 at PP 35, 37.

[65] *Compare* PIOs Rehearing Request at 3-4, 6, 8 *with* Cost Allocation Order, 192 FERC ¶ 61,159 at PP 33, 35, 38.

[66] *Compare* PIOs Rehearing Request at 5, 7, 8 *with* Cost Allocation Order, 192 FERC ¶ 61,159 at PP 33, 35, 37.

[67] *Compare* PIOs Rehearing Request at 6 *with* Cost Allocation Order, 192 FERC ¶ 61,159 at P 38.

[68] *Compare* PIOs Rehearing Request at 7 *with* Cost Allocation Order, 192 FERC ¶ 61,159 at P 38.

[69] *Compare* PIOs Rehearing Request at 7-8 *with* Cost Allocation Order, 192 FERC ¶ 61,159 at PP 35, 38.

operation of the Eddystone Units were roughly commensurate with the allocation of costs.[70]

26.       We also deny PIOs' request for stay.  First, PIOs have not satisfied the Commission's filing requirements to request a motion for stay.[71]  But, even if PIOs' request was not deficient, we nevertheless would find it unpersuasive on the merits. The Commission reviews requests for stay under the standard established by the Administrative Procedure Act: a stay will be granted if the Commission finds that "justice so requires."[72]  Under this standard, the Commission considers such factors as: (1) whether the moving party will suffer irreparable injury without a stay, (2) whether a stay would substantially harm other parties, and (3) whether the stay is in the public interest.[73]  The Commission's general policy is to refrain from granting stays in order to assure definiteness and finality in its proceedings.[74]  If the party requesting the stay is unable to demonstrate that it will suffer irreparable harm absent a stay, we need not examine the other factors.[75]  As the D.C. Circuit has explained, the standard for showing irreparable harm is strict:

> [T]he injury must be both certain and great; it must be actual and not theoretical. . . . It is also well settled that economic loss does not, in and of itself, constitute irreparable harm. . . . Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a

---

[70] Cost Allocation Order, 192 FERC ¶ 61,159 at PP 30-40.

[71] 18 C.F.R. § 385.212(c) (2025) (requiring that a motion must "contain a clear and concise statement of: (1) The facts and law which support the motion").

[72] 5 U.S.C. § 705.

[73] *See Const. Pipeline Co., L.L.C.*, 154 FERC ¶ 61,092, at P 9 (2016); *Transcon. Gas Pipe Line Co., L.L.C.*, 150 FERC ¶ 61,183, at P 9 (2015); *Millennium Pipeline Co., L.L.C.*, 141 FERC ¶ 61,022, at P 14 (2012).

[74] *See, e.g.*, *Sea Robin Pipeline Co.*, 92 FERC ¶ 61,217 at 61,710 (2000).

[75] *See, e.g., Algonquin Gas Transmission, LLC*, 154 FERC ¶ 61,236, at P 8 (2016); *Transcon. Gas Pipe Line Co.*, 150 FERC ¶ 61,183 at P 9; *Millennium Pipeline Co.*, 141 FERC ¶ 61,022 at P 14.

later date, in the ordinary course of litigation weighs heavily
against a claim of irreparable harm.[76]

27.     PIOs have not demonstrated that any financial harm PJM ratepayers may face is
irreparable and could not otherwise be relieved in the ordinary course of litigation,
including through refunds, if warranted.  Nor have they made any showing that a stay
would be in the public interest.  Accordingly, we deny PIOs' request for stay of the Cost
Allocation Order.

The Commission orders:

        In response to the requests for rehearing, the Cost Allocation Order is hereby
modified and the result sustained, as discussed in the body of this order.

By the Commission.

( S E A L )



                                        Debbie-Anne A. Reese,
                                           Secretary.

---

[76] *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Va.
Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Document Accession #: 20251222-3060          Filed Date: 12/22/2025

Document Content(s)

ER25-2653-001.docx.................................................................1